UNITED STATES DISTRICT COURT	b
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| BERNAL AGUILAR | CIVIL ACTION 1:14-CV-3476 |
|---|---|
| VERSUS | JUDGE TRIMBLE |
| LOUISIANA DEPARTMENT OF CORRECTIONS, *et al.* | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Defendants filed two partial motions for summary judgment (Docs. 44, 46). It is recommended that Defendants' motions be granted and Aguilar's action be dismissed with prejudice in its entirety.

I.   Background

Before the Court is a civil rights complaint filed pursuant to 42 U.S.C. § 1983, *in forma pauperis*, by pro se plaintiff Bernal Aguilar ("Aguilar") (Doc. 1 & 8). The named defendants are the James LeBlanc ("LeBlanc") (Secretary of the Louisiana Department of Corrections ("DOC")), Nathan Cain ("Cain") (former warden of the Avoyelles Correctional Center ("ACC")[1] in Cottonport, Louisiana), Dr. George Smith ("Smith") (a physician employed at the ACC), and Sandra Sibley ("Sibley") (director of nursing at ACC).

---

[1] The Avoyelles Correctional Center has been renamed the Raymond Laborde Correctional Center. See http://www.corrections.state.la.us/contact/correctional-facilities/raymond-laborde-correctional-center.

Aguilar's claims for monetary damages against Warden Cain and Secretary LeBlanc in their official capacities were dismissed, but his claim for a declaratory judgment and/or prospective injunctive relief against them in their official capacities (Doc. 32). Aguilar's action against Secretary Leblanc in his individual capacity was also dismissed (Doc. 32).

Aguilar contends he has been denied surgeries for his umbilical hernia and ano-rectal hemorrhoids/polyp, as well as his prescribed medications, during his incarceration at ACC. Aguilar contends that, before he arrived at ACC, he was receiving Gabapentin (Neurontin) for seizures, fish oil omega III for high cholesterol, an iron supplement for chronic anemia (due to continuous hemorrhaging of his rectal polyp), steroid/hydrocortisone suppositories (to shrink the polyp), a special fiber-rich diet, and Lisinopil for high blood pressure (Doc. 8). Aguilar seeks his medications, surgeries to correct his hernia and remove the hemorrhoids/polyp, and monetary damages (Docs. 1, 8). Aguilar is still confined in the Raymond Laborde Correctional Center (formerly the Avoyelles Correctional Center).

Aguilar's remaining claim against Secretary LeBlanc is in his official capacity only, and for declaratory judgment and/or prospective injunctive relief only (Doc. 32). Aguilar's remaining claim against Warden Cain in his individual capacity is for all relief, and in his official capacity for declaratory judgment and/or prospective injunctive relief only (Doc. 32).

Defendants answered the complaint (Doc. 33) and filed Aguilar's medical records (Doc. 34). Defendants Smith, Sibley, and Cain filed a motion for partial

summary judgment, contending Aguilar failed to exhaust his administrative remedies as to his claim that he has not received proper medical care for his ano-rectal hemorrhoids and umbilical hernia (Doc. 44). Defendants Smith, Sibley, and Cain filed a second motion for partial summary judgment, contending Aguilar was not denied his prescribed medication at ACC (Doc. 46). Aguilar filed a response to Defendants' first motion for summary judgment (Doc. 48), but has not opposed the second motion for summary judgment.

Defendants' partial motions for summary judgment are now before the Court for disposition.

II.   Law and Analysis

   A.   Aguilar failed to exhaust his claims for denial of umbilical hernia and hemorrhoid surgeries.

Defendants contend Aguilar failed to exhaust his administrative remedies as to his claim that he was denied prescribed surgeries for his umbilical hernia and his ano-rectal hemorrhoid/polyp (Doc. 34).

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. See 42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 211 (2007). Exhaustion is mandatory, irrespective of the forms of relief sought and offered through administrative remedies. See Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). The exhaustion requirement of 42 U.S.C. § 1997e applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,

3

and whether they allege excessive force or some other wrong. See Porter v. Nussle, 534 U.S. 516, 532 (2002). Resort to a prison grievance process must precede resort to a court. See Porter, 534 U.S. at 529.

The exhaustion requirement imposed by amended § 1997e is not jurisdictional. Woodford v. Ngo, 548 U.S. 81, 101 (2006). However, the Fifth Circuit held in Gonzalez v. Seal, 702 F.3d 785, 788 (5th Cir. 2012), that exhaustion is mandatory and district courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. A case must be dismissed if available administrative remedies were not exhausted.

Aguilar shows he filed an ARP with the Warden that charged Sibley with "malfeasance in office" for overriding Dr. Smith's orders and revising Aguilar's medical records (Doc. 48-1, pp. 1-2/5). That ARP was denied (Doc. 48-1, pp. 1-2/5). Aguilar further shows he proceeded to the second step with that grievance and was denied there, also (Doc. 48-1, pp. 3-4/5).

Aguilar also shows he filed grievances at ACC, asking for his medications (Doc. 1-2, pp. 19-20, 22-23/24) and for an examination of his rectal bleeding (Doc. 1-2, p. 22-23/24). Defendants also show Aguilar filed ARPs for his claim of denial of medications (Doc. 44-3).

There is no evidence that Aguilar filed any grievance at ACC concerning the purported denial of surgeries for his umbilical hernia and ano-rectal hemorrhoids/polyp. Therefore, Defendants' motion for summary judgment as to

Aguilar's claim that he was denied surgeries at ACC (Doc. 44) should be granted for lack of exhaustion.

## B. Aguilar failed to show he was denied his medications at ACC.

Aguilar contends that, since he was incarcerated in ACC on August 15, 2014, he has been denied his prescribed medications–Gabapentin (Neurontin) for seizures, fish oil omega III for high cholesterol, an iron supplement for chronic anemia (due to continuous hemorrhaging of his rectal polyp), steroid/hydrocortisone suppositories (to shrink the polyp), a special fiber-rich diet, and Lisinopil for high blood pressure (Doc. 8).

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832 (1994). Although the Eighth Amendment does not, by its precise words, mandate a certain level of medical care for prisoners, the Supreme Court has interpreted it as imposing a duty on prison officials to ensure that inmates receive *adequate* medical care. See Easter v. Powell, 467 F.3d 459, 463 (5th Cir. 2006) (citing Farmer, 511 U.S. at 832). The fact that the medical care given is not the best that money can buy does not amount to deliberate indifference. See Mayweather v. Foti, 958 F .2d 91, 91 (5th Cir. 1992); Ruiz v. Estelle, 679 F.2d 1115, 1149 (5th Cir. 1982), amended in part and vacated in part on other grounds, 688 F.2d 266, 267 (5th Cir. 1982); see also Brauner v. Coody, 793 F.3d 493, 500 (5th Cir. 2015).

Under the Eighth Amendment, a lack of proper inmate medical care can be "cruel and unusual punishment" only if it is "sufficiently harmful to evidence deliberate indifference to serious medical needs." See Estelle v. Gamble, 429 U.S. 97, 106 (1976). First, the deprivation must be, objectively, sufficiently serious and the prison official's act or omission must result in the denial of the minimum civilized measure of life's necessities. Second, a prison official must have a sufficiently culpable state of mind–i.e. deliberate indifference to a prisoner's constitutional rights–to be subjected to § 1983 liability. See Farmer, 511 U.S. at 834. The Supreme Court defined "deliberate indifference" as "subjective recklessness," or, in other words, a conscious disregard of a substantial risk of serious harm. See Farmer, 511 U.S. at 839.

A prison official is deliberately indifferent to serious medical needs of prisoners if he intentionally denies or delays access to medical care. See Walker v. Butler, 967 F.2d 176, 178 (5th Cir. 1992); Thompkins v. Belt, 828 F.2d 298, 303 (5th Cir. 1987). A prison inmate can demonstrate an Eighth Amendment violation by showing that a prison official refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. See Easter v. Powell, 467 F.3d 459, 463-464 (5th Cir. 2006) (citing Domino v. Tex. Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001)); see also, Chapman v. Johnson, 339 Fed. Appx. 446, 448 (5th Cir. 2009) (the fact that defendant was aware inmate had a serious injury and was instructed to provide pain relief medication, but did not do so, could demonstrate an

Eighth Amendment violation). Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997).

In his complaints (Docs. 1, 8), Aguilar alleges that Defendants failed to provide him with the medications that were prescribed for him by specialists. Defendants contend Aguilar's medical records show he has received all of his medications.

Defendants show, in an affidavit by Dr. Smith (Doc. 46-3) and their statement of undisputed facts (Doc. 46-2) that, when Aguilar was admitted to ACC, he was prescribed Neurontin (gabapentin)[2] to control his seizures. Dr. Smith consulted with Aguilar's treating neurologist, Dr. Melcher, who advised that Depakote would be a good substitute for Neurontin/gabapentin (Doc. 46-3). Aguilar's medical records show that Dr. Smith spoke to Dr. Melchar at the Mayo Clinic on September 4, 2014, that Depakote was a good alternative medicine, and that Dr. Smith informed Aguilar of the conversation and he agreed to be started on Depakote (Doc. 46-4). That substitution took place in October 2014 (Doc. 46-3). However, Depakote alone did not adequately control Aguilar's seizures, so Neurontin (gabapentin) was added bock to his medication in July 2015, together with Depakote (Doc. 46-3).

Defendants also show in their statement of undisputed facts (Doc. 46-2) that, when Aguilar was admitted, he was also taking Docusate (Surfak, for constipation), ferrous sulfate (iron supplement), Lisinopril (Zestril, for hypertension), Pravastatin (Pravachol, for high cholesterol), Bisacodyl (Dulcolax, for constipation), and Tylenol

---

[2] Neurontin is a brand name for gabapentin.

twice a day. Defendants contend that, except for changing Aguilar's Gabapentin to Depakote, all of his other medications remained the same and were provided to him (Doc. 46-2). Aguilar's medical records show he was given Gabapentin, Docusate, ferrous sulfate, lisiopril, Pravastatin, Bisacodyl, and Tylenol from the time he arrived at ACC through October 2015 (Doc. 34-1, pp. 50-66, 68, 71/140; Doc. 46-5). There were occasional substitutions, such as substitution of Lopid (Gemfibrozil) for Pravachol in June 2015 (Doc. 34-1, p. 56/140), but Aguilar received medications for all of his medical conditions. Aguilar has not shown that Defendants were deliberately indifferent to his serious medical needs. Aguilar's claim amounts to no more than disagreement with the prescribed treatment.

Finally, Defendants show in their statement of undisputed facts and Nurse Sibley's affidavit that neither Nurse Sibley nor Warden Cain had authority to prescribe medications for Aguilar (Docs. 46-2, 46-7).

Aguilar has not submitted any evidence to refute Defendants' evidence or to show Defendants did not provide him with medications. Therefore, Defendants' motion for summary judgment as to Aguilar's claim that he was denied medication at ACC should be granted.

### C. Aguilar's action against the DOC should be dismissed.

Aguilar listed the DOC as a defendant in the caption of his initial complaint (Doc. 1), However, Aguilar never completed a summons for the DOC and no attempt was ever made to effect service on it. See Fed. R. Civ. P. 4(m); see also See McGinnis v. Shalala, 2 F.3d 548, 550 (5th Cir. 1993), cert. den., 510 U.S. 1191 (1994); Systems

Signs Supplies v. U.S. Dept. of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990); Kersh v. Derosier, 851 F.2d 1509, 1512 (5th Cir. 1988). Moreover, a state is not a "person" under §1983, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), nor is an arm of the state, Laxey v. Louisiana Board of Trustees, 22 F.3d 621, 623 n.2 (5th Cir. 1994); Cronen v. Texas Dept. of Human Services, 977 F.2d 934, 936 (5th Cir. 1992). Finally, a § 1983 action against the Louisiana Department of Public Safety and Corrections is barred by the Eleventh Amendment. See Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312, 314 (5th Cir. 1999).

Accordingly, Aguilar's action against the DOC should be dismissed with prejudice.

### D. Aguilar's action against Secretary LeBlanc in his official capacity should be dismissed.

Aguilar asks for prospective injunctive and declaratory relief against Secretary LeBlanc in his official capacity as the Secretary of the Louisiana DOC.

An official capacity suit against a state officer is not a suit against the official but rather against the official's office. Neither a state nor its officers acting in their official capacities are "persons" under §1983. Hafer v. Melo, 502 U.S. 21, 27 (1991) (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989)); Voisin's Oyster House v. Guidry, 799 F.2d 183, 188 (5th Cir. 1986). The sole exception to this rule is when the plaintiff seeks prospective relief. See Darlak v. Bobear, 814 F.2d 1055, 1060–61 (5th Cir.1987). A state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State. Hafer, 502 U.S. at 27.

Since Aguilar has failed to prove a violation of his constitutional right to medical care, he has not shown he is entitled to prospective injunctive or declaratory relief against Secretary Leblanc.

Therefore, Aguilar's action against Secretary LeBlanc in his official capacity should be dismissed with prejudice.

III.  Conclusion

Based on the foregoing, IT IS RECOMMENDED that Defendants' two partial motions for summary judgment (Docs. 44, 46) be GRANTED and that Aguilar's action against Dr. Smith, Sibley, and all remaining claims against Cain be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Aguilar's action against the DOC be DENIED AND DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Aguilar's remaining claims against Secretary LeBlanc (in his official capacity for injunctive and declaratory relief) be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy

of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this 17th day of August, 2017.

Joseph H.L. Perez-Montes
United States Magistrate Judge